**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                  )
MENACHEM BINYAMIN ZIVOTOFSKY,     )
by his parents and guardians,     )
ARI Z. and NAOMI SIEGMAN          )
ZIVOTOFSKY,                       )
                                  )
              Plaintiffs,         )
                                  )
     v.                           )        Civil Action No. 03-1921 (GK)
                                  )
THE SECRETARY OF STATE,           )
                                  )
              Defendant.          )
                                  )
```

<u>MEMORANDUM OPINION</u>

This case involves the question of whether an American citizen, born in Jerusalem, has the right to have "Israel" listed as his place of birth on his United States passport. The Plaintiff is Menachem Binyamin Zivotofsky, a United States citizen born in Jerusalem on October 17, 2002. He brings this suit by his parents, Ari Z. and Naomi Siegman Zivotofsky, against the Secretary of State (the "Secretary"), alleging that the Secretary's failure to list his place of birth as "Israel" on his passport violates Section 214(d) of the Foreign Relations Authorization Act, Fiscal Year 2003, Pub. L. No. 107-228, 116 Stat. 1350, 1365-66 (2002) (the "Act").

This matter is now before the Court on the Secretary's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) [**Dkt. No. 44**] or in the alternative for

Summary Judgment pursuant to Fed. R. Civ. P. 56 [**Dkt. No. 46**] and Zivotofsky's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [**Dkt. No. 39**].   Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons set forth below, the Court concludes that this case poses a non-justiciable political question.   Accordingly, the Secretary's Motion to Dismiss is **granted** and the parties' Motions for Summary Judgment are **denied as moot.**

I.    **BACKGROUND**

     A.    **Facts[1]**

     Plaintiff was born at the Shaare Zedek Hospital in the City of Jerusalem on October 17, 2002.   Because both of his parents are United States citizens, Plaintiff was also born an American citizen and was entitled to a United States passport.   On December 24, 2002, Plaintiff's mother, Naomi Siegman Zivotofsky, applied on the Plaintiff's behalf for a United States passport and Consular Report of Birth Abroad from the United States Embassy in Tel Aviv, Israel. She requested in her application that the passport and Consular Report of Birth Abroad list the Plaintiff's birthplace as "Israel." However, she was told that "Israel" would not be listed as the place of birth in these documents pursuant to State Department

---

[1] The undisputed facts contained herein are drawn from the Complaint, the parties' Statements of Material Facts submitted pursuant to Local Civil Rule 7(h), and declarations submitted by the parties in support of their Motions for Summary Judgment.

regulations.  Instead, the State Department issued Plaintiff a passport and Consular Report of Birth Abroad that listed "Jerusalem" as Plaintiff's place of birth and made no mention of "Israel."

The final political status of Jerusalem has been in dispute since 1948 as a result of the long-standing Arab-Israeli conflict. Since the Truman Administration, the executive branch has pursued a policy of encouraging the parties to that conflict to settle all outstanding issues, including the final status of Jerusalem, through peaceful negotiations between the parties with the support of the broader international community.  Therefore, the executive branch of the United States government does not acknowledge the sovereignty of any state over Jerusalem.

State Department passport policy reflects the executive branch's policy with regard to the status of Jerusalem.  The State Department's <u>Foreign Affairs Manual</u> requires that citizens born in Jerusalem after May 14, 1948 shall have their place of birth listed as "Jerusalem."  Declaration of JoAnn Dolan, Sept. 29, 2006 ("Dolan Decl."), Ex. 2 (7 FAM § 1383.1(b) & Part II: Other Countries & Territories).  The <u>Manual</u> makes clear that "Israel" should not be entered on the passports of United States citizens born in Jerusalem.  <u>Id.</u>

On September 30, 2002, Congress enacted the Foreign Relations Authorization Act for Fiscal Year 2003.  Pub. L. No. 107-228, 116

Stat. 1350 (2002).   Section 214 is titled "United States policy with respect to Jerusalem as the capital of Israel."   Id. at 1365. Subsection (a), which is not at issue here, "urges the President" to relocate the United States Embassy in Israel from Tel Aviv to Jerusalem.   Id.   Subsection (d) provides

> RECORD OF PLACE OF BIRTH AS ISRAEL FOR PASSPORT PURPOSES.--For purposes of the registration of birth, certification of nationality, or issuance of a passport of a United States citizen born in the city of Jerusalem, the Secretary shall, upon the request of the citizen or the citizen's legal guardian, record the place of birth as Israel.

Id. at 1366.

The President signed the Act into law on the same day, and made the following statement:

> Section 214, concerning Jerusalem, impermissibly interferes with the President's constitutional authority to conduct the Nation's foreign affairs and to supervise the unitary executive branch.   Moreover, the purported direction in section 214 would, if construed as mandatory rather than advisory, impermissibly interfere with the President's constitutional authority to formulate the position of the United States, speak for the Nation in international affairs, and determine the terms on which recognition is given to foreign states.   U.S. policy regarding Jerusalem has not changed.

Statement by President George W. Bush Upon Signing H.R. 1646, 2002 U.S.C.C.A.N. 931, 932 (Sept. 30, 2002).

Following the enactment of Section 214(d), a State Department cable to its overseas posts noted that the "media and public in many Middle Eastern and Islamic states continue to believe that the State Authorization Bill signals a change in U.S. policy towards

4

Jerusalem." Dolan Decl., Ex. 3 (DOS 001791). The cable clarified that, despite the enactment of Section 214, United States policy regarding Jerusalem had not changed, that the status of Jerusalem "must be resolved through negotiations between the parties," and that the United States opposed actions by any party that would prejudice those negotiations. Id. (DOS 001792).

**B.  Procedural History**

Plaintiff filed suit against the Secretary of State in September 2003, claiming that Section 214(d) required the Secretary to issue Plaintiff a passport and Consular Record of Birth Abroad with the designation of "Jerusalem, Israel" as the place of birth. Compl. ¶ 9. Plaintiff sought a declaratory judgment and permanent injunction ordering the Secretary to issue these documents with corrected place of birth designations and also requested attorney's fees and costs pursuant to 28 U.S.C. § 2412.

In December 2003, the Secretary filed a Motion to Dismiss [Dkt. No. 6] pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) arguing, inter alia, that Plaintiff lacked standing and that the case presented a non-justiciable political question. In February 2004, Plaintiff filed his Opposition to the Motion to Dismiss in conjunction with a Motion for Summary Judgment. [Dkt. No. 14]. In a Memorandum Opinion and accompanying Order dated September 7, 2004, this Court held that Plaintiff lacked standing and that the case presented a non-justiciable political question,

and therefore dismissed the case for lack of subject matter jurisdiction.  [Dkts. No. 21 & 22].

Plaintiff appealed the Order dismissing the case.  On February 17, 2006, our Court of Appeals reversed and remanded for further proceedings.  Zivotofsky v. Sec'y of State, 444 F.3d 614 (D.C. Cir. 2006).  The Court of Appeals held that Plaintiff had standing to sue.  Id. at 617.  It also held that, for purposes of analyzing whether the case presented a political question, "[t]he case...no longer involves the claim the district court considered."  Id. at 619.  The Complaint initially sought an injunction requiring the Secretary to issue Plaintiff a passport and Consular Report of Birth Abroad with "Jerusalem, Israel" listed as the place of birth. Id. at 616, n.1.  On appeal, however, the parties agreed that the proper question was whether Section 214(d) entitles Plaintiff to a passport and Consular Report of Birth Abroad that records "Israel" as his place of birth.  Id. at 619.

The Court of Appeals noted that "[w]ether this, too, presents a political question depends on the meaning of § 214(d)--is it mandatory or, as the government argues, merely advisory?"  Id.  The Court of Appeals also noted that the question may turn on the foreign policy impact of "listing 'Israel' on the passports of citizens born in Jerusalem."  Id.  The case was remanded to this Court "so that both sides may develop a more complete record."  Id. at 620.

6

_____Following remand, this Court issued a Scheduling Order providing for three months of discovery to allow the parties to develop a more complete record. [Dkt. No. 30]. After completion of discovery, the parties filed the pending dispositive motions.

## II.  **STANDARD OF REVIEW**

To prevail on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is the plaintiff's burden to establish that the court has subject matter jurisdiction to hear the case.  In re Swine Flu Immunization Prods. Liab. Litig., 880 F.2d 1439, 1442-43 (D.C. Cir. 1989); Jones v. Exec. Office of the President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). While the Court must accept as true all factual allegations contained in the complaint, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "plaintiff's factual allegations in the complaint...will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," because the plaintiff bears the burden of proof.  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal quotation marks omitted).  In making its determination regarding the existence of subject matter jurisdiction, the court may consider matters outside the pleadings,  Lipsman v. Sec'y of the Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003), especially where, as here, the court has allowed jurisdictional discovery.

## III. ANALYSIS

The courts lack jurisdiction over "political questions that are by their nature 'committed to the political branches to the exclusion of the judiciary.'" Schneider v. Kissinger, 412 F.3d 190, 193 (D.C. Cir. 2006) (quoting Antolok v. United States, 873 F.2d 369, 379 (D.C. Cir. 1989) (separate opinion of Sentelle, J.)). Thus, "[t]he nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 210 (1962).

In Baker, the Supreme Court laid out the six factors that characterize a non-justiciable political question:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217. The presence of any one factor indicates that the case presents a non-justiciable political question. Schneider, 412 F.3d at 194.

"The contours of the political question doctrine are murky and unsettled" and "[n]ot every political case presents a political question." Bancoult v. McNamara, 445 F.3d 427, 435 (D.C. Cir.

8

2006) (internal quotation marks omitted).  However, cases involving
questions of foreign policy and national security "serve as the
quintessential sources of political questions."  <u>Id.</u> at 433.
"Matters intimately related to foreign policy and national security
are rarely proper subjects for judicial intervention."  <u>Haig v.
Agee</u>, 453 U.S. 280, 292 (1981).

     The Government argues that five of the six <u>Baker</u> factors apply
in this case.  When we apply these factors of the <u>Baker</u> analysis to
this case, we see that it raises a quintessential political
question which is not justiciable by the courts.

### A.   The Text of the Constitution Commits Foreign Policy Questions to the Political Branches of the Government

     The first <u>Baker</u> factor requires the Court to determine if
there is "a textually demonstrable constitutional commitment of the
issue to a coordinate political department."  369 U.S. at 317.

     "The conduct of the foreign relations of our Government is
committed by the Constitution to the Executive and Legislative--
'the political'--Departments of the Government, and the propriety
of what may be done in the exercise of this political power is not
subject to judicial inquiry or decision."  <u>Schneider</u>, 412 F.3d at
194 (quoting <u>Oetjen v. Cent. Leather Co.</u>, 246 U.S. 297, 302
(1918)).

     Articles I and II of the Constitution provide a number of
specific grants of power to Congress and the President to manage
the nation's foreign policy and provide for the nation's security.

See Schneider, 412 F.3d at 194-95.   In particular, Article II, Section 3 provides that the President "shall receive Ambassadors and other public Ministers."   The Supreme Court has construed this clause to include the power of the President to recognize foreign sovereigns.  Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410 (1964) ("Political recognition is exclusively a function of the Executive"); Baker, 369 U.S. at 212 ("recognition of foreign governments so strongly defies judicial treatment that without executive recognition a foreign state has been called 'a republic of whose existence we know nothing'") (quoting United States v. Klintock, 18 U.S. (5 Wheat.) 144, 149 (1820)).

The authority to recognize a foreign sovereign "is not limited to a determination of the government to be recognized.  It includes the power to determine the policy which is to govern the question of recognition."  United States v. Pink, 315 U.S. 203, 229 (1942). More specifically and most relevantly to this case, "the judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory."  Baker, 369 U.S. at 212.  See also Occidental of Umm al Qaywayn, Inc. v. Certain Cargo of Petroleum, 577 F.2d 1196, 1203 (5th Cir. 1978) ("The ownership of lands disputed by foreign sovereigns is a political question of foreign relations, the resolution or neutrality of which is committed to the executive branch by the Constitution.").

The grant of power to the President in Article II to receive ambassadors, which has been construed by the courts to include the power to recognize the sovereignty of foreign governments over disputed territory, demonstrates a constitutional commitment of this issue to the executive branch of the Government.

Plaintiff argues that this case does not require the Court to determine the status of Jerusalem but only to interpret and apply the provisions of Section 214.  Plaintiff is wrong.  Resolving his claim on the merits would necessarily require the Court to decide the political status of Jerusalem.  The case law makes clear that the Constitution commits that decision to the executive branch. The first Baker factor is therefore present in this case.

**B.   The Court Lacks Judicially Manageable Standards for Resolving Foreign Policy Questions**

The second Baker factor examines whether there is "a lack of judicially discoverable and manageable standards for resolving" the question before the Court.  369 U.S. at 217.

In Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111 (1948), the Supreme Court held that foreign policy decisions are "of a kind for which the Judiciary has neither aptitude, facilities nor responsibility."  Questions of foreign policy are "delicate, complex, and involve large elements of prophecy.  They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil." Id.  "Unlike the executive, the judiciary has no covert agents, no

11

intelligence sources, and no policy advisors" to assist in making

such decisions.  Schneider, 412 F.3d at 196.

As the Government correctly argues, the Court cannot resolve

Plaintiff's claim without considering current United States policy

regarding the status of Jerusalem and weighing the possible

consequences of changes in that policy.

In the State Department's judgment, an order by this Court

that Plaintiff's passport record "Israel" as his place of birth

> would signal, symbolically or concretely, that [the
> United States] recognizes that Jerusalem is a city that
> is located within the sovereign territory of Israel [and]
> would critically compromise the ability of the United
> States to work with Israelis, Palestinians and others in
> the region to further the peace process, to bring an end
> to violence in Israel and the Occupied Territories, and
> to achieve progress on the Roadmap.  The Palestinians
> would view any United States change with respect to
> Jerusalem as an endorsement of Israel's claim to
> Jerusalem and a rejection of their own.  It would be seen
> as a breach of the cardinal principle of U.S. foreign
> policy barring any unilateral act(s) that could prejudge
> the outcome of future negotiations between the contending
> parties and cause irreversible damage to the credibility
> of the United States and its capacity to facilitate a
> final and permanent resolution of the Arab-Israeli
> conflict.

Dolan Decl., Ex. 1 (Def.'s Interrogatory Response No. 5).

Moreover, the destabilizing impact of any Court order would be felt

regardless of whether the place of birth for citizens born in

Jerusalem was recorded as "Israel" or "Jerusalem, Israel."  Id.

The international reaction to the enactment of Section 214(d)

further corroborates the State Department's analysis.  According to

a State Department cable summarizing that reaction:

> Palestinians from across the political spectrum strongly condemned the Jerusalem provisions of the State Authorization Bill, interpreting those provisions as a reversal of longstanding U.S. policy that Jerusalem's status should be determined by Israel and the Palestinians in final status talks.

Dolan Decl., Ex. 4 (DOS 001867).  The Governments of Saudi Arabia, Russia, and Iran joined in the criticism.  S. Arabia, Russia, Iran Flay US over Al Quds, DAWN, Oct. 3, 2002 (available at http://www.dawn.com/2002/10/03/top11.htm).

The political situation in the Middle East is enormously complex, volatile, and long-standing.  Indeed, "it is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict, which has raged on the world stage with devastation on both sides for decades."  Doe I v. State of Israel, 400 F. Supp. 2d 86, 111-12 (D.D.C. 2005).

There are no judicially discoverable or manageable standards for the Court to apply in considering this fundamental and extraordinarily weighty question of U.S. foreign policy.  As our Court of Appeals held in Schneider, the courts lack the policy advisors, intelligence sources, and other institutional resources to even begin to resolve a foreign policy issue of this magnitude. 412 F.3d at 196.  Nor has the Plaintiff suggested any judicially discoverable or manageable standards that could be applied in this case.  Accordingly, the second Baker factor is also present here.

### C. Resolution of this Case Would Be Impossible Without Expressing Lack of Respect to Coordinate Branches of Government

The fourth <u>Baker</u> factor[2] is triggered by "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government."  369 U.S. at 217.

In <u>Sanchez-Espinoza v. Reagan</u>, 568 F. Supp. 596 (D.D.C. 1983), <u>aff'd on other grounds</u>, 770 F.2d 202 (D.C. Cir. 1985), twelve members of Congress brought suit against President Ronald Reagan for allegedly violating the Boland Amendment, which prohibited the use of funds to support the Contra insurgents fighting the Sandinista regime in Nicaragua.  President Reagan had publicly stated that the Administration was not violating the Boland Amendment--a statement that was met with strenuous disagreement from many members of Congress.  <u>Id.</u> at 600.  The court held that were it "to decide, on a necessarily incomplete evidentiary record, that President Reagan either is mistaken, or is shielding the truth, one or both of the coordinate branches would be justifiably offended."  <u>Id.</u>

Here too, a decision by the Court would run the risk of "justifiably offending" one or both of the political branches.

---

[2] The Government does not argue that the third <u>Baker</u> factor, "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion," 369 U.S. at 217, applies to this case.

Since the Truman Administration, the executive branch has pursued a policy of not recognizing the sovereignty of any state over Jerusalem, pending the outcome of negotiations between the parties to the Arab-Israeli dispute.  Congress apparently sought to alter this policy through the enactment of Section 214, which is titled "United States policy with respect to Jerusalem as the capital of Israel."  The President views Section 214, if construed as mandatory, as impermissibly interfering "with the President's constitutional authority to formulate the position of the United States, speak for the Nation in international affairs, and determine the terms on which recognition is given to foreign states."  2002 U.S.C.C.A.N. at 932.

This conflict between the political branches could be avoided if, as the Secretary urges, Section 214(d) could be construed as advisory, and not mandatory.  But it is difficult to construe Section 214(d) as anything but mandatory.  It states that the "Secretary <u>shall</u>, upon the request of the citizen or the citizen's legal guardian, record the place of birth as Israel."  116 Stat. at 1366 (emphasis added).  The term "shall" has generally been construed as mandatory language that does not permit the exercise of discretion.  <u>See, e.g.</u>, <u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>, ___ U.S. ___, 127 S. Ct. 2518, 2531-32 (2007) (statutory language that the EPA "shall approve" an application if nine statutory factors are present does not permit

agency discretion to consider other factors).   By contrast, Congress chose very different language in another subsection of the same statute, Section 214(a), when it "urge[d]" the President to relocate the U.S. Embassy to Jerusalem.   This contrasting language clearly indicates that Congress understood the difference between "urging" the President to take certain action and "mandating" it. The Congressional intent to make Section 214(d) mandatory is clear.

Therefore, a decision by this Court on the merits would risk offending either, or both, the legislative and executive branches, which are at loggerheads over United States policy regarding Jerusalem.   Such conflicts are best resolved through political means, by the two political branches themselves.   Goldwater v. Carter, 444 U.S. 996, 1003 (1979) (Rehnquist, J., concurring). Thus, the fourth Baker factor is also present in this case.

**D.  Resolution of this Case Involves the Potentiality of Embarrassment from Multifarious Pronouncements by Various Departments on One Question**

The sixth Baker factor[3] involves "the potentiality of embarrassment from multifarious pronouncements by various departments on one question."   369 U.S. at 217.

---

[3] Given that four of the six Baker factors are present in this case, the Court need not address the fifth Baker factor: whether there is an unusual need to adhere to a previously made political decision.   See Population Inst. v. McPherson, 797 F.2d 1062, 1070 (D.C. Cir. 1986) (the "unusual need for adherence to a political decision already made" factor is among the most nebulous identified in Baker).

The effect of conflicting pronouncements by coordinate branches on the political status of Jerusalem is already apparent. Congress' enactment of Section 214 created outrage among Palestinians and was subject to criticism by foreign governments. A State Department cable regarding Section 214 stated that "[d]espite our best efforts to get the word out that U.S. policy on Jerusalem has not changed, the reservations contained in the President's signing statement have been all but ignored, as Palestinians focus on what they consider the negative precedent and symbolism of an American law declaring that Israel's capital is Jerusalem." Dolan Decl., Ex. 4 (DOS 001867).

Should this Court add its voice to those of the President and Congress on the subject of Jerusalem's status, a controversial reaction is virtually guaranteed. Such a reaction can only further complicate and undermine United States efforts to help resolve the Middle East conflict. Therefore, the sixth <u>Baker</u> factor is also present here.

### E.   Plaintiff's Other Arguments Do Not Address <u>Baker</u>

Plaintiff fails to address the six <u>Baker</u> factors. Instead, Plaintiff raises a number of arguments that are irrelevant to the <u>Baker</u> analysis. Even if the arguments had merit, which they do not, they would still have no bearing on determining whether this case poses a non-justiciable political question.

17

First, Plaintiff argues that the State Department's acquiescence in 1994 to legislation permitting the Secretary of State to list "Taiwan" as a place of birth, State Department Authorization Technical Corrections Act of 1994, Pub. L. No. 103-415, 108 Stat. 4299, shows that there would be no adverse foreign policy consequences in this case because the Taiwan legislation and Section 214(d) are virtually identical.

In response, the Secretary argues that the Taiwan legislation did not require the executive branch to alter its pre-existing "One China" policy, which acknowledged the People's Republic of China as the sole legitimate government of China. The Taiwan legislation permits a United States citizen born in "Taiwan" to have "Taiwan" entered on his or her passport. Entering the geographic term "Taiwan" does not contradict the "One China" policy because it does not necessarily imply that Taiwan is not subject to Chinese sovereignty. It is also consistent with the policy expressed in the Foreign Affairs Manual that citizens are allowed to designate the city or town rather than the country of their birth if they object to the entry of a country name.

Section 214, by contrast, directs the Secretary to enter the country name "Israel" for persons born in the city of Jerusalem. According to the Secretary, this does contradict existing executive branch policy because it at least implicitly recognizes the city of Jerusalem to be within the sovereign territory of Israel.

18

Thus, the two situations are simply not analogous.

Second, Plaintiff argues that past surveys of foreign governments indicate that many of these governments would accept passports that do not disclose the bearer's place of birth.  In 1977 and 1986, the State Department surveyed a number of foreign governments regarding their attitudes toward the inclusion of place of birth information in U.S. passports.  The results were mixed: some countries stated that they would accept passports that did not contain place of birth information, while other countries stated that they would not accept passports that did not contain that information, including such countries as France, Germany, and Italy.  Declaration of Alyza D. Lewin, Oct. 3, 2006 ("Lewin Decl.") Ex. 15 (DOS 001778-79); Lewin Decl. Ex. 16 (DOS 001285).  Based on these results, the State Department chose to continue to include place of birth information on United States passports.

Plaintiff argues that these survey results show that the inclusion of place of birth information in United States passports has no foreign policy implications.  The survey results do not support this argument.  Indeed, it is difficult to draw any conclusions from the mixed responses of the responding governments, especially because the rationale that underlay the response of each foreign government is unknown.  Moreover, it is clear from the record in this case that foreign governments <u>did</u> react negatively when Congress enacted Section 214.

Third, Plaintiff argues that the fact that some official documents have already inadvertently referred to "Jerusalem, Israel" without generating controversy demonstrates that this case does not have serious foreign policy implications. However, these clerical errors have not had an adverse impact on the foreign policy interests of the United States because they are just that-- clerical errors, and did not constitute official statements of United States policy. Furthermore, the contentious foreign response to the passage of Section 214 directly conflicts with Plaintiff's argument that this case will not have a serious impact on United States foreign policy.

Finally, and most significantly, none of these arguments are germane to the <u>Baker</u> analysis which the Court must conduct. Consequently, they present no reason to alter the Court's conclusion that this case presents a non-justiciable political question. Because the Court lacks subject matter jurisdiction, it need not address the arguments raised in the parties' Motions for Summary Judgment.

**IV.  CONCLUSION**

For the foregoing reasons, the Secretary's Motion to Dismiss for Lack of Subject Matter Jurisdiction [**Dkt. No. 44**] is **granted**; the Secretary's Motion in the Alternative for Summary Judgment [**Dkt. No. 46**] and Plaintiff's Motion for Summary Judgment [**Dkt. No. 39**] are **denied as moot**.  This case is **dismissed** for lack of subject

20

matter jurisdiction.   An Order shall issue with this Memorandum

Opinion.


                                         /s/
September 19, 2007                    Gladys Kessler
                                     United States District Judge


**Copies to: Attorneys of record via ECF**